UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CORNELIUS DAVIS,

    Plaintiff,

v.                                                           Case No. 3:23cv930-TKW-HTC

SOUTHEAST QSR LLC,

    Defendant.
_____/

ORDER and
REPORT AND RECOMMENDATION

Plaintiff Cornelius Davis ("Davis"), proceeding *pro se*, sues his former employer Defendant Southeast QSR, LLC, ("QSR") for race and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Doc. 1. Before the Court is Defendant's motion for summary judgment, Doc. 62. Upon consideration, the undersigned finds the motion should be GRANTED and judgment entered in favor of QSR because Davis has offered no evidence supporting his claims.

**I.    UNDISPUTED STATEMENT OF FACTS**[1]

QSR owns and operates several Taco Bell stores, including a store in Pensacola, Florida, located on New Warrington Road. Wiley, Aff. ¶ 3. Davis is an

---

[1] The facts are derived from the Affidavit of Jawanna Wiley, Doc. 62-1, and Plaintiff's deposition transcript, Doc. 62-2. Plaintiff did not submit a sworn statement of facts or any other evidence.

African American male who worked as a crew member at that store from 2018 to 2021. Pl.'s Depo. pp. 61:24-25 – 62:1-9; 63:1-8; 64:8-25; 79:18-22; 81:16.

On September 26, 2021, Davis was scheduled to work from 8 a.m. until "late." *Id.* at 74:14-20. However, Davis left 10–15 minutes into his shift because he received a phone call from his mother informing him his cousin had died in a motorcycle accident. *Id.* at 74:14-25 – 75:1-6; 76:1-4. When Davis returned to work a day or two later, manager Charlotte McVay ("McVay"), told him he had been terminated for "job abandonment." *Id.* at 96:5-15; 98:8-11.[2]

Following his termination, Davis sought re-employment at QSR's Taco Bell store on Mobile Highway in Pensacola by calling a manager named "Sheila." *Id.* at 81:17 – 83:13. However, Sheila informed Davis that McVay had placed him on a "no rehire list" and, thus, he was "not eligible to work at another Taco Bell." *Id.* at 82:20 – 83:22; 85:3-5. Davis also contacted an area coach named "Darius" and "HR," but an employee named "Amy" sent him a text message saying he needed to find employment elsewhere. *Id.* at 57:10-25; 115:5-25. Despite making these inquiries, Davis did not complete a new employment application. *See id.* at 116:20-

---

[2] Elsewhere in his deposition, Davis testified McVay told him he was fired for "cussing out a manager" named Michelle. Pl.'s Depo. pp. at 76:8 –77:13. Davis also testified McVay terminated him in retaliation for Davis not wanting to sleep with McVay, although he admits McVay never attempted to sleep with him or made any sexual advances toward him. *Id.* at 155:17-24; 157:16-25; 158:1-16.

Case No. 3:23cv930-TKW-HTC

25. QSR requires all terminated employees seeking to be rehired to submit a new employment application. Wiley, Aff. ¶ 5.

Later, Davis learned QSR had rehired two White females, who McVay had also fired for walking out of their jobs. *Id.* at 96:14 – 99:20. Davis identified one of these females as a manager named Teneca Brunner ("Brunner"). *Id.* at 97:16-17; *see also* Doc. 62-1 at 1. Brunner had submitted a job application and was rehired by an area market coach named Mohamed Abdelaty ("Abdelaty"). Doc. 62-1 at 1; Pl.'s Depo. pp., 113:4-11; 115:12-14. Davis does not recall the name of the other female, does not know who decided to rehire her, what position she was rehired for, or whether she filled out an application. He knows, however, QSR rehired her because he saw her working at the "Airport" Taco Bell location. Pl.'s Depo. pp., 96:21 – 98:3; 114:12–115:14.

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must review the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion

for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

## III. DISCUSSION

### A. Race and Gender Discrimination

Davis contends QSR discriminated against him by (1) denying him work breaks and (2) not rehiring him. To prevail on a claim of discrimination, whether based on race or sex, Davis must prove QSR "acted with discriminatory intent." *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 980 (11th Cir. 1989) (race-based discrimination case); *see also EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000) (applying same standard in a sex-based discrimination case). Davis can prove discriminatory intent through either direct evidence or circumstantial evidence. *See Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1336 (11th Cir. 2024).

Davis, however, has pointed to no direct evidence of discrimination. Direct evidence of discrimination is "evidence which, if believed, proves the existence of a fact without inference or presumption." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227 (11th Cir. 2002). "[O]nly the most blatant remarks, whose intent

could be nothing other than to discriminate on the protected classification" constitute direct evidence of discrimination. *Id.* (citations omitted and cleaned up). Here, Davis has presented no evidence showing he was subjected to any overtly discriminatory comments based on either his race or gender. *Cf. E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990) (finding direct evidence of racial discrimination in manager's use of racial slurs and openly stating that "blacks were meant to be slaves" and were of lower intelligence); *Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 930 (11th Cir. 1995) (comments that "women were simply not tough enough to do the job" found to be direct evidence of sex discrimination).

Davis also has presented no circumstantial evidence from which a jury could infer discriminatory intent. To establish a prima facie case of discrimination based on circumstantial evidence, a plaintiff must show: "(1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question; and (4) his employer treated 'similarly situated' employees outside his class more favorably. *See Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). If the plaintiff makes this showing, then the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer meets its burden, "to avoid summary judgment [the plaintiff] must introduce

significantly probative evidence showing that the asserted reason is merely a pretext for discrimination. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993). Here, the burden never shifts to QSR because Davis cannot meet the second or fourth elements of a prima facie case of discrimination.

First, Davis cannot show that he suffered an adverse employment action. An adverse employment action is "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). The action "must, in some substantial way, alter the employee's compensation, terms, conditions or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted and cleaned up).

As stated above, Davis contends QSR discriminated against him by denying him work breaks. Even if true, being denied breaks is not the type of material change in the terms or privileges of employment that rises to the level of an adverse employment action. *See Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604, 609 (11th Cir. 2008) (no adverse employment action where White supervisor was subjected to an increased workload, was denied breaks while Black supervisors were not, and forced to perform certain manual labor outside his job description); *see also*

*Aryain v. Wal–Mart Stores Texas LP*, 534 F.3d 473, 486 (5th Cir. 2008) (holding that having some break requests denied by a supervisor in the context of an entry-level retail job "amount to nothing more than the 'petty slights' or 'minor annoyances' that all employees face from time to time."). While Davis may not have liked being denied a break, "an employment action … is not adverse merely because the employee dislikes it or disagrees with it," and "not everything that makes an employee unhappy is an actionable adverse action." *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (citations and quotations omitted).

Similarly, QSR's failure to rehire Davis also does not qualify as an adverse employment action because QSR required terminated employees to complete a new application for employment if they wanted to be considered for re-employment, Wiley Aff., at ¶ 5, and Davis failed to do so. *Jones v. Ala. Power Co.*, 282 F. App'x 780, 785 (11th Cir. 2008). In Davis's response to the motion, he does not dispute that he did not complete a job application. Instead, he claims he asked for his job back by contacting "Amy" and "Darius."[3] Doc. 65 at 1-2. However, when an

---

[3] The only issue Davis addresses in his 2-page response to the motion for summary judgment is the lack of evidence regarding whether he asked for his job back. Doc. 65. Davis alleges he communicated with employees "Amy" and "Darius" of HR and attaches various text messages/emails to his response as evidence of those communications. *Id.* QSR argues in its reply, Doc. 68, that the Court should disregard the text messages because they do not support Davis's claims, may not be authentic, and were not produced in discovery. Thus, QSR asks for the Court to strike the exhibits. Davis's response is not sworn or verified and the text messages/emails have not been authenticated. However, the Court need not strike the exhibits because they do not alter the outcome of the summary judgment motion. Namely, they do not show Davis submitted an application for re-employment.

Case No. 3:23cv930-TKW-HTC

employer has a formal application process, "an expression of a general interest in being rehired is not sufficient to satisfy the application requirement." *Id.* at 785. Davis's failure to submit an application for re-employment is fatal to his discrimination claim. *See Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1346 (11th Cir. 2003) (agreeing with the Sixth and Seventh Circuits that "[a] general interest in being rehired without submitting an application is not enough to establish a prima facie case of age discrimination").[4]

Second, Davis cannot show QSR treated "similarly situated" employees outside his class more favorably. Although Davis claims other White employees were given breaks, Davis's testimony shows otherwise. Specifically, Davis admits (1) it was the nature of his position as team leader and one of McVay's "main people" that prevented him from taking breaks, and (2) at least one White person, Brunner, was also not permitted breaks for the same reason. *See* Pl.'s Depo. pp., 109:7 – 112:21.

Davis also claims QSR failed to rehire him but rehired two White females – Brunner and an unidentified White female. Those two employees, however, are not sufficiently similarly situated to serve as Davis's comparators. A valid comparator must be similarly situated to the plaintiff "in all material respects." *Lewis v. City of*

---

[4] In *Smith*, the court determined that plaintiff's failure to submit an application for re-employment precluded plaintiff from establishing she applied for a job for which she was qualified. 352 F.3d at 1344–45.

*Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019). This generally means that a plaintiff and his comparator "will[ ] have engaged in the same basic conduct or misconduct, be subject to the same employment policies, have the same supervisor(s), and share an employment or disciplinary history." *Jenkins*, 26 F.4th at 1249 (citing *Lewis*, 918 F.3d at 1227–28). A plaintiff and his comparators must be so similar, in an objective sense, "that they 'cannot reasonably be distinguished.'" *Id.* (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)). Such is not the case here.

Brunner is not a valid comparator because she was rehired by Abdelaty (not McVay), was a manager (not a crew employee), and completed a new employment application. *See Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001) ("[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination."). The other unidentified White female also cannot be a valid comparator because Davis has no information regarding the circumstances surrounding her rehiring at the Airport store; thus, his reliance on this person as a comparator "is essentially meaningless." *See Howard v. Wilkie*, 421 F. Supp. 3d 1279, 1287 (N.D. Ala. 2019) ("The court has no information as to the identity of these males, what positions they were hired for, their employment history, whether they had been terminated by Defendant in the past, and the like. Without any information whatsoever regarding these males who were

allegedly hired by Defendant, it is impossible for the court to make the requisite comparison.").

Finally, the Eleventh Circuit has recognized that a plaintiff who fails to establish a prima facie case of discrimination under the *McDonnell Douglas* framework, may, nonetheless, be able to survive summary judgment by presenting a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination. *Lewis*, 934 F.3d at 1185. A plaintiff may establish a convincing mosaic with evidence of "(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn[;] (2) systematically better treatment of similarly-situated employees[;] and (3) that the employer's justification is pretextual." *Id.* (internal citation and quotation marks omitted). Davis has not pointed to any such evidence, nor has he argued he can defeat summary judgment under the convincing mosaic theory. *See Lewis v. Med. Ctr., Inc.,* 2022 WL 16541165, at *9 (M.D. Ga. Oct. 28, 2022) (granting summary judgment where Plaintiff failed to "point to such evidence that would allow a jury to infer intentional discrimination").

Because Davis has presented no direct or circumstantial evidence of race or gender discrimination, his discrimination claims under § 1981 and Title VII fail as a matter of law.

Case No. 3:23cv930-TKW-HTC

### B. Race or Gender Retaliation

As stated above, Davis also alleges QSR terminated him in retaliation for complaining about the attendance policy. To survive summary judgment under the burden-shifting framework on a retaliation claim, a plaintiff must establish a prima facie case of retaliation by showing that: (1) he "engaged in statutorily protected activity;" (2) he "suffered a materially adverse action;" and (3) "there was a causal connection between the protected activity and the adverse action." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257–58 (11th Cir. 2012) (citations and internal quotation marks omitted); *see also* 42 U.S.C. § 2000e–3(a). Here, Davis has not shown he engaged in statutorily protected activity or that there was a causal connection between such activity and his termination.

"A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Hamilton v. Sheridan Healthcorp Inc.*, 602 F. App'x 485, 489 (11th Cir. 2015) (citing the EEOC Compliance Manual § 8–II(B)(2) (1998)). Although Davis alleges in the complaint that he complained about an attendance policy, there is no evidence of such complaints. Regardless, even if he had complained about an attendance policy, there is no evidence Davis

complained that policy, or any policy, was discriminatory.[5] *See* Pl.'s Depo. pp., 91:13 – 94:19.

Moreover, Davis cannot show he was terminated for complaining about discrimination or other prohibited conduct because he testified he was terminated for job abandonment, for "cussing out a manager," or because he did not want to sleep with McVay.[6] *See Leigh v. Avossa*, 2019 WL 1296881, at *25 (S.D. Fla. Mar. 21, 2019) (finding plaintiff cannot prevail on his Title VII retaliation claim as a matter of law because his allegations and admissions show he was subjected to an adverse employment action for engaging in unprotected conduct); *see also Carter v. Donahoe*, 2015 WL 2024844, at *3 (M.D. Fla. Apr. 30, 2015) ("To satisfy the causal connection requirement of a prima facie case, the Supreme Court clarified that a Title VII plaintiff must demonstrate 'but-for' causation to sustain a retaliation claim."). Because Davis has presented no evidence that he was terminated for engaging in protected conduct, QSR is entitled to summary judgment on Davis's retaliation

---

[5] At one point in Davis's deposition, he testified that he told McVay and another supervisor that a district manager named "Justin" was racist. Pl.'s Depo. pp. 91:13-94:19. That complaint, however, was made at least a year before Davis was terminated and, thus, is too attenuated to be the cause of his termination. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law"); *see also Higdon v.* Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (three to four months between the protected activity and the employment action is not enough to establish causation).

[6] To the extent Davis contends his termination was discriminatory, such a claim also fails as a matter of law. While a termination is an adverse employment action, as discussed herein, Davis has no direct or circumstantial evidence showing that QSR terminated him because of his race or gender and he testified he was terminated for other reasons.

Case No. 3:23cv930-TKW-HTC

claims.  *See Hamilton*, 602 F. App'x. at 489 (affirming summary judgment where the plaintiff "pointed to no evidence showing that he engaged in protected activities before his termination").

### C. Motion for Discovery

Along with Davis's response to the motion for summary judgment, Davis also filed a one-paragraph "motion for evidence discovery," which, in its entirety, states as follows: "I Cornelius Davis request evidence from QSR LLC I never received any evidence I have requested multiple times and never received." Doc. 70. This motion is DENIED.

First, discovery closed on April 11, 2024, and Davis has failed to establish the good cause or excusable neglect necessary to warrant a modification of this Court's scheduling order.[7]  *See* Fed. Rs. Civ. P. 6(b)(1)(B) and 16(b)(4); *see also* Doc. 12 (requiring any motion to extend the discovery deadline to detail discovery completed, that which remains due, and provide a firm scheduling for completion). Second, the Court's scheduling order requires motions to compel to be filed at least 30 days before the close of discovery and Davis has filed no such motion. *See* Doc. 9 (stating that, "motions to compel discovery are due no later than 30 days before

---

[7] Davis filed this action, through counsel, in January 2023.  The Court issued a Final Scheduling Order in April 2023, closing discovery on March 1, 2024.  Doc. 12.  After counsel withdrew, the Court stayed the case for 30 days to allow Davis to obtain new counsel, which he did not do.  Doc. 14.  In August, the Court lifted the stay and referred all pretrial proceedings to the undersigned for disposition.  Doc. 24.  Because of the stay, the discovery deadline was extended to April 11, 2024.

the close of discovery" and the Court shall not ordinarily entertain untimely motions). Third, even if the Court were to liberally interpret the motion as a Rule 56(d) motion, Davis is not entitled to relief.

Under Federal Rule of Civil Procedure 56(d), a court may defer or deny a motion for summary judgment, or allow additional time for discovery, if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). A Rule 56(d) movant, however, cannot "simply rely on vague assertions that additional discovery will produce needed, but unspecified facts, but must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021) (internal quotations omitted). A Rule 56(d) movant must also have been diligent in pursuing discovery. *See Exigent Tech. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1310 (Fed. Cir. 2006).

Here, Davis has not filed the requisite affidavit. Regardless, in the motion, Davis does not state what discovery is missing, what discovery he still needs, why any such discovery is relevant to the summary judgment motion, or why he did not seek to file a timely motion to compel. "Failure to satisfy [the rule 56(d)] burden is fatal to an argument that the district court granted summary judgment prematurely

by failing to order or await the results of further discovery." *City of Miami Gardens,* 931 F.3d 1274, 1286 (11th Cir. 2019).

Accordingly, it is ORDERED:

1. Plaintiff's motion for evidence discovery, Doc. 70, is DENIED.

It is further RECOMMENDED:

1. Defendant's motion for summary judgment, Doc. 62, be GRANTED.

2. That this case be DISMISSED WITH PREJUDICE.

3. That the clerk close the file.

At Pensacola, Florida, this 6th day of August, 2024.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.